UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

SYLVIA CACERES and JEREMIAH ESTRELLA,

       Plaintiffs,                         **COMPLAINT**

          v.                   **JURY TRIAL DEMANDED**

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, JOHN DOE 1, as commanding officer
of the 33rd Precinct Detective Squad on March 30, 2023;
DIANE LOPEZ, Detective; JOHN DOES 2-10,
persons employed by the City of New York,

       Defendants.

_____

The Plaintiffs, SYLVIA CACERES and JEREMIAH ESTRELLA, by and through their

attorneys, Lebedin Kofman LLP, complain and allege of the Defendants as follows:

## INTRODUCTION

1.      Plaintiffs bring this action for compensatory damages, punitive damages, and

attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988 for the deprivation by Defendants, acting

under color of law, of rights guaranteed to Plaintiffs under the United States Constitution and

federal and state laws. Defendants deprived the Plaintiffs of these guaranteed rights when they

unlawfully detained, used excessive force, arrested, imprisoned, charged, and/or attempted to

prosecute them.

## JURISDICTION

2.      This action is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction

over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 2201 because it is brought to seek

relief and/or damages for the deprivation, under color of state law, of rights guaranteed by the Constitution of the United States and federal law.

3.       Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in it.

## PARTIES

4.       Plaintiff SYLVIA CACERES is a citizen of the United States and currently resides in New York County, New York.

5.       Plaintiff JEREMIAH ESTRELLA is a citizen of the United States and currently resides in New York County, New York. He was a minor at the time of the events but is currently over 18 years old.

6.       At all relevant times, defendant CITY OF NEW YORK was a municipal corporation incorporated and existing under the laws of the State of New York, which operated, controlled, and managed defendant NYPD. Its principal place of business is 100 Church Street, New York, NY 10007.

7.       At all relevant times, defendant NEW YORK CITY POLICE DEPARTMENT was and is an agency of defendant City, and directly supervised the individual Defendants, with its principal place of business being 1 Police Plaza, New York, NY 10038.

8.       At all relevant times, defendant JOHN DOE 1 was the captain or commanding officer of the 33rd Precinct Detective Squad on March 30, 2023 with his principal place of business being the 33rd Precinct, 2207 Amsterdam Avenue, New York, NY 10032. The name of this individual is believed to be Bryan Natale. Claims against this defendant are asserted in his individual capacity.

9. Upon information and belief, at all relevant times, defendant DIANE LOPEZ, tax 958828, was a Detective with the New York City Police Department 33rd precinct detective squad with her principal place of business being the 33rd Precinct, 2207 Amsterdam Avenue, New York, NY 10032. Claims against this defendant are asserted in her individual capacity.

10. Upon information and belief, at all relevant times, defendants JOHN DOES 2-10 were detectives or police officers with the New York City Police Department working out of the 33rd precinct or the 33rd precinct detective squad with their principal place of business being the 33rd Precinct, 2207 Amsterdam Avenue, New York, NY 10032. The identities of these defendants are not yet known. However, they participated in some or all of the incidents at issue in this case, including coming into Plaintiffs' home, detaining and arresting them, using excessive force, arresting and imprisoning them, attempting to or interrogating them, and charging or attempting to charge them, and any other claims asserted. Claims against these defendants are asserted in their individual capacities.

11. At all relevant times, the individual defendants acted in the scope of their authority as public servants for the City of New York Police Department and the City of New York, and under color of law, to wit, under the color of the Constitution, statutes, laws, rules, regulations, ordinances, charters, customs, policies, and usages of the State and City of New York.

## **FACTS**

12. On March 30, 2023, the plaintiff, Sylvia Caceres, was asleep in her bedroom at home where she lived with her three sons who were then 4, 16, and 18-years old.

13. That morning, only Sylvia and her then 16-year-old, plaintiff Jeremiah Estrella were home, as the youngest was at his father's and the oldest had not been home for about two days.

14. Around 6:00 AM that morning, Ms. Caceres woke up to sounds of yelling. She got up and went to Jeremiah's bedroom door, which was closed as he was still asleep.

15. Then about 7 NYPD officers, defendants John Does 2-8, burst through the front door with guns pointed and yelling "put your hands up!" and said they were looking for Ms. Caceres' oldest son.

16. Defendant Detective Diane Lopez applied for and was issued the search warrant to search the home.

17. Ms. Caceres told defendants he was not there and that only Jeremiah was home asleep in his bedroom.

18. The defendants slammed her onto the floor and handcuffed her, then broke down her Jeremiah's bedroom door, yelling "where is the gun" in Spanish. At least one defendant pointed an automatic machine gun at Jeremiah.

19. When Jeremiah told them he did not understand them, as he spoke only limited Spanish, they threatened him, then handcuffed him and detained him in the living room with Ms. Caceres.

20. Defendants then went into the oldest son's bedroom and when he was not home as Ms. Caceres told them, they threatened to arrest her and Jeremiah if they did not tell them where he was. They honestly told them that they did know and Ms. Caceres told them that he may be at

his girlfriend's. Defendants continued to hostilely insist that plaintiffs knew where he was, why they were looking for him, and that they knew about a gun, which they did not.

21. During this time, defendants searched the oldest son's bedroom and said they found a gun in a plastic storage dresser behind his closed closet door.

22. Neither plaintiff knew anything about the gun, nor was it found in either of their bedrooms or anywhere near them or within their reachable area.

23. Despite the lack of legal cause, defendants detained plaintiffs in their home for approximately two hours.

24. During this time, Ms. Caceres, who had recently had a medical procedure, began bleeding. She told the police and asked to change her bloodied clothing but they told her she had to wait for a female officer, believed to be defendant Lopez, to arrive first, which did not happen for at least another hour.

25. Then defendants arrested Ms. Caceres and Jeremiah for the gun, despite the lack of legal cause to even continue to detain them, let alone to arrest them.

26. They were brought to the 33rd precinct and held in separate areas.

27. Jeremiah was brought to an interrogation room where defendants John Does 9-10 tried to pressure him into answering their questions and continued to insist that he knew something.

28. Then they brought Ms. Caceres past the interrogation room and implied to Jeremiah that she would be going to jail. They also threatened Jeremiah that if his older brother was not found, he and his mother would be going to jail instead.

29.     He was left in the interrogation room for hours before being handcuffed to a desk then eventually released without charge after about 16 hours in custody.

30.     Jeremiah's wrists were hurt from the tight handcuffs, and he missed a few days of school because of the incident.

31.     The incident also traumatized him. Since then, he is afraid to go to sleep, and when he finally does, his sleep is often disturbed because he startles awake if he hears a loud noise. He also startles easily in general and feels anxious when he sees police or hears sirens.

32.     Ms. Caceres was brought to central booking where she continued to be held until she was finally released on or about March 31, 2023 when the district attorney declined to prosecute her.

33.     She spent about 29 hours in custody.

34.     Her shoulder and back were also injured from the police slamming her on the floor and possibly also from the lengthy transport to central booking.

35.     As a result of her shoulder injury, Ms. Caceres suffered pain and was unable to lift her arm. She had to get medical treatment and her shoulder still hurts sometimes when she tries to lift something.

36.     She also suffered back pain and spasms, and there were times that she would be unable to stand because of the pain. She had to get medical treatment for her back and still suffers from back spasms.

37.     She was also suspended from her job because of the arrest and she lost significant income.

38.     The incident also traumatized her. She panics when she hears sirens or someone at their door, and when she sees police and she became vigilant and fearful.

39.     Defendants also destroyed plaintiffs' personal property, including but not limited to Jeremiah's bedroom door, Ms. Caceres' dresser, and their front door locks, which Ms. Caceres had to replace. Defendants also took their phones and Ms. Caceres' smartwatch, which they have still not returned, and which Ms. Caceres had to replace.

40.     Also as a result of the arrest, Administration for Children's Services opened an investigation and did not allow Jeremiah or his siblings to return home while it was pending.

41.     This caused additional stress and worry for Ms. Caceres, her youngest son, and Jeremiah.

42.     Upon information and belief, the oldest son was ultimately arrested and charged and the charges against him were dismissed in about December 2024.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS LOPEZ AND JOHN DOES 2-10
### Violation of Constitutional Rights Under Color of State Law
### Unlawful Seizure

43.     Plaintiffs incorporate by reference and reallege each and every allegation previously stated.

44.     As described above, defendants Lopez and John Does 2-10 seized or caused plaintiffs to be seized, despite the apparent lack of legal cause to do so.

45.     This violated plaintiffs' constitutional right to be free from unlawful seizures and is also a violation of 42 U.S.C. § 1983.

46.     As a direct and proximate result of these actions and inactions, plaintiffs have been injured.

## AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS
## JOHN DOES 2-10
### Violation of Constitutional Rights Under Color of State Law
### Excessive Use of Force

47.     Plaintiffs incorporate by reference and reallege each and every allegation previously stated.

48.     As described above, defendants slammed Ms. Caceres on the floor, injuring her. They also applied excessively tight handcuffs to Jeremiah, hurting his wrists.  These actions were objectively unreasonable, and undertaken intentionally, willfully, maliciously, sadistically, and for the sole purpose of harming and punishing plaintiffs.

49.     This violated plaintiffs' constitutional right to be free from excessive force and is also a violation of 42 U.S.C. § 1983.

50.     As a direct and proximate result of these actions and inactions, plaintiffs have been injured.

## AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS
## LOPEZ AND JOHN DOES 2-10
### Violation of Constitutional Rights Under Color of State Law
### Failure to Intervene/Failure to Protect

51.     Plaintiffs incorporate by reference and reallege each and every allegation previously stated.

52.     As described above, the defendants who did not directly violate plaintiffs, failed to intervene when they saw their fellow officers doing so and despite having plenty of opportunity to intervene.

53.	This violated plaintiffs' constitutional rights and is also a violation of 42 U.S.C. § 1983.

54.	As a direct and proximate result of these actions and inactions, plaintiffs have been injured.

## AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS LOPEZ AND JOHN DOES 2-10
### Violation of Constitutional Rights Under Color of State Law
### False Arrest and False Imprisonment

55.	Plaintiffs incorporate by reference and reallege each and every allegation previously stated.

56.	As described above, defendants arrested then held plaintiffs in custody, despite the lack of legal cause.

57.	This violated plaintiffs' constitutional right to be free from false arrest and unlawful imprisonment and is also a violation of 42 U.S.C. § 1983.

58.	As a direct and proximate result of these actions and inactions, plaintiffs have been injured.

## AS AND FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS LOPEZ AND JOHN DOES 2-10
### Violation of Constitutional Rights Under Color of State Law
### Violation of Right to Fair Trial

59.	Plaintiffs incorporate by reference and reallege each and every allegation previously stated.

60.	As described, and upon information and belief, and despite the lack of evidence that plaintiffs committed a crime, the individual defendants pushed ahead with the charges and

presented information to the district attorney that mislead the nature and strength of the evidence against plaintiffs and/or that omitted the evidence and information that they were not culpable for the crimes they were charged with.

61.    This violated plaintiffs' constitutional right to be free from violations of the right to fair trial and is also a violation of 42 U.S.C. § 1983.

62.    As a direct and proximate result of these actions and inactions, plaintiffs have been injured.

**AS AND FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, AND JOHN DOE 1**
**Violation of Constitutional Rights Under Color of State Law**
**Implementation of Policies that Directly Violate Constitutional Rights/Failure to Implement Policies and Practices to Avoid Violations of Constitutional Rights and Failure to Train/Supervise Employees and Agents**

63.    Plaintiffs incorporate by reference and reallege each and every allegation previously stated.

64. Upon information and belief, defendants City of New York and New York City Police Department have failed to institute and implement appropriate policies at the Police Department on a variety of subjects including seizures, detentions, arrests, charges, prosecution, and other areas of importance to the constitutional rights of citizens and arrestees.

65. In the alternative, and upon information and belief, the City, NYPD, and John Doe 1 have instituted policies addressing these topics but through gross negligence have demonstrated deliberate indifference to citizens and arrestees by failing or refusing to enforce them.

66. Upon information and belief, these defendants have also failed to adequately hire, screen, and supervise police officers, and to provide adequate training and supervision regarding their duties as they relate to the constitutional rights of citizens and arrestees.

67. As set forth above, the individual defendants seized, detained, arrested, used excessive force, and/or charged plaintiffs and attempted to cause one or both of them to be prosecuted on false charges, despite the apparent lack of sufficient evidence and legal cause.

68. The fact that defendants felt comfortable enough to do this openly is indicative of a culture where unlawful or unconstitutional acts are tolerated and not punished.

69. The violations against plaintiffs occurred in accordance with this culture, and with practices, policies, and customs in the 33rd precinct and the 33rd detective squad, as well as in the NYPD as a whole, where officers, including officers of rank like sergeants and lieutenants, violate the law and NYPDs own rules, with very few ever being disciplined at all, let alone meaningfully.

70. The violations against plaintiffs also occurred through the City, NYPD's, and John Doe 1's failures to act on information indicating violations were occurring, and through their gross negligence in supervising subordinates, including the individual defendants here.

71. For example, according to the website https://www.50-a.org, which tracks complaints against NYPD officers, there have been nearly 650 allegations of civil rights and other violations against officers in the 33rd Precinct. The vast majority have been in the last 10 or so years.

72. Of these, about 81 have been substantiated (the conduct occurred and violated NYPD rules) and about 155 have been either exonerated or within NYPD guidelines (the conduct

occurred but did not violate NYPD rules). Another 30 or so were closed pending litigation, and nearly 30 more were administratively closed without a determination.

73. The substantiated or exonerated charges include things such as discourteous language and other abuses of authority, threats of arrest, illegal stops, illegal searches, illegal premises entries and searches, excessive force, improperly pulling or pointing a gun, false arrests, destruction of property, and giving false statements, among other things.

74. About 10 of the substantiated charges, and 30 of the exonerated charges were against sergeants, lieutenants, and a captain.

75. There have also been about 50 lawsuits brought in state and federal courts against various officers from this precinct, including sergeants and lieutenants, which have either been successful or are currently pending. They are charged with everything from illegal stops, seizures, and searches, to false arrests and malicious prosecutions, to excessive force, among other things.

76. In the 33rd detective squad specifically, there have been more than 130 allegations of civil rights and other violations against detectives, including about 14 against lieutenants and sergeants. All but one case happened in the last 10 years.

77. About 16 have been substantiated and 30 more have been exonerated or within NYPD guidelines. Another 11 were closed pending litigation and 2 were administratively closed without finding.

78. There have also been about 30 lawsuits brought in state and federal courts against various detectives from this squad, including sergeants and lieutenants, which have either been successful or are currently pending. They are also charged with everything from illegal stops,

seizures, and searches, to false arrests and malicious prosecutions, to excessive force, among other things.

79. The violations against plaintiffs occurred against this backdrop and in accordance with this very culture, and these very practices, policies, and customs, through the City, NYPD's, and John Doe 1's failures to act on information indicating violations were occurring in this precinct and squad, and through their gross negligence in supervising subordinates, including the individual defendants here.

80.    As a direct and proximate result of these actions and inactions, plaintiffs have been injured.

## DEMAND FOR PUNITIVE DAMAGES

81.    The actions and inactions of the individual defendants as described were extreme, outrageous, and shock the conscience of a reasonable person and an award of punitive damages is appropriate.  Punitive damages are not sought from the municipal defendants.

## DEMAND FOR TRIAL BY JURY

82. The plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiffs request that this Honorable Court grant them the following relief:

A.  A judgment in favor of plaintiffs against all defendants for compensatory damages in

an amount to be determined by a properly charged jury;

B.  A judgment in favor of plaintiffs against all individual defendants for punitive

damages in an amount to be determined by a properly charged jury;

C.  A monetary award for attorney's fees and the costs of this action pursuant to 42 USC

§ 1988;

D.  Any other relief this Court finds to be just, proper, and equitable.

Dated:  March 25, 2026                           Respectfully submitted by:
        Orange County, New York

                                                 **s/ Jessica Gorman**
                                                 Jessica M. Gorman
                                                 Lebedin Kofman, LLP
                                                 300 Merrick Road, Suite 403
                                                 Lynbrook, New York 11563
                                                 T: (212) 500-3273
                                                 F: (855) 696-6848
                                                 E: jgorman@lebedinkofmanlaw.com

                                                 **ATTORNEYS FOR PLAINTIFFS**